UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

TIME SQUARE CONSTRUCTION, INC.

                 Plaintiff,

               07 CIV. 7403 (SULLIVAN)

    v.

               ECF CASE

BUILDING AND CONSTRUCTION TRADES
COUNCIL OF GREATER NEW YORK,
ENTERPRISE ASSOCIATION OF
STEAMFITTERS LOCAL 638 OF THE UNITED     **COMPLAINT**
ASSOCIATION, CEMENT AND CONCRETE
WORKERS LOCAL 20 OF THE LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA, UNITED BROTHERHOOD OF
CARPENTERS & JOINERS OF AMERICA LOCAL
608, LOCAL #46 METALLIC LATHERS UNION
AND REINFORCING IRONWORKERS OF NEW
YORK AND VICINITY OF THE
INTERNATIONAL ASSOCIATION OF BRIDGE,
STRUCTURAL, ORNAMENTAL AND
REINFORCING IRON WORKERS,
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B, INTERNATIONAL
UNION OF OPERATING ENGINEERS, LOCAL
15D, AFFILIATED WITH THE AFL-CIO,
LABORERS LOCAL 79, A CONSTITUENT
LOCAL UNION OF THE MASON TENDERS
DISTRICT COUNCIL OF GREATER NEW YORK,
AFFILIATED WITH LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA, MASON TENDERS DISTRICT
COUNCIL OF GREATER NEW YORK, DISTRICT
COUNCIL OF NEW YORK CITY AND VICINITY
OF THE UNITED BROTHERHOOD OF
CARPENTERS, JOINERS OF AMERICA, AFL-CIO
AND LOCAL UNION 3, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
AND TEAMSTERS LOCAL 282 A/W
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL-CIO
                 Defendants.

------------------------------------------------------------------ x

Plaintiff, Time Square Construction, Inc. (hereinafter referred to as "Time Square" or "Plaintiff"), by and through its attorneys, McDermott Will & Emery LLP, as and for its complaint against defendants, Building and Construction Trades Council of Greater New York, Enterprise Association of Steamfitters Local 638 of the United Association, Cement and Concrete Workers Local 20 of the Laborers International Union of North America, United Brotherhood of Carpenters & Joiners of America Local 608, Local #46 Metallic Lathers Union and Reinforcing Ironworkers of New York and Vicinity of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, International Union of Operating Engineers Local 14-14B, International Union of Operating Engineers, Local 15D, affiliated with the AFL-CIO, Laborers Local 79, a constituent local union of the Mason Tenders District Council of Greater New York, affiliated with Laborers International Union of North America, Mason Tenders District Council of Greater New York, District Council of New York City and Vicinity of the United Brotherhood of Carpenters, Joiners of America, AFL-CIO and Local Union 3, International Brotherhood of Electrical Workers and Teamsters Local 282 a/w International Brotherhood of Teamsters (hereinafter collectively referred to as "Defendants" or "Unions") alleges as follows:

## NATURE OF THIS ACTION

1. This is an action to seek damages pursuant to Section 303 of the Labor Management Relations Act of 1947, 29 U.S.C. § 187 (the "LMRA," the or "Section 303"), based on the Unions' repeated violations of the National Labor Relations Act, 29 U.S.C. § 158 (b) (4) (the "Act") by engaging in illegal picketing and secondary boycotts of Time Square at a jobsite located at 785 Eighth Avenue, New York, New York (the "Jobsite" or the "Project") with the object of forcing Time Square to cease doing business

with non-union affiliated subcontractors working at the Jobsite and to assign work to subcontractors affiliated with the Building and Construction Trades Council of Greater New York (the "BCTC").

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Section 303(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

3. Venue is proper in this court because the acts giving rise to this complaint occurred in this District.

## THE PARTIES

4. Time Square is a corporation organized under the laws of Delaware with its principal offices located at 355 Lexington Avenue, New York, New York. Time Square is an employer within the meaning of Section 2(2) of the Act, 29 U.S.C. § 152(2).

5. The BCTC is and at all pertinent times has been an unincorporated association of labor organizations with its principal offices located at 71 West 23rd Street, New York, New York.

6. Enterprise Association of Steamfitters Local 638 of the United Association (hereinafter referred to as "Local 638") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 32-32 48th Avenue, Long Island City, New York. Local 638 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

7. Cement and Concrete Workers Local 20 of the Laborers International Union of North America (hereinafter referred to as "Local 20") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 3636 33rd Street, Long Island City, New

York. Local 20 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

8.  United Brotherhood of Carpenters & Joiners of America Local 608 (hereinafter referred to as "Local 608") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 505 Eighth Avenue, New York, New York. Local 608 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

9.  Local #46 Metallic Lathers Union and Reinforcing Ironworkers of New York and Vicinity of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers (hereinafter referred to as "Local 46") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 1322 Third Avenue, New York, New York. Local 46 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

10. International Union of Operating Engineers Local 14-14B (hereinafter referred to as "Local 14-14B") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 141-57 Northern Boulevard, Flushing, New York. Local 14-14B is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

11. International Union of Operating Engineers, Local 15D, affiliated with the AFL-CIO (hereinafter referred to as "Local 15D") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its

principal office located at 265 West 14th Street, New York, New York. Local 15D is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

12.   Laborers Local 79, a constituent local union of the Mason Tenders District Council of Greater New York, affiliated with Laborers International Union of North America (hereinafter referred to as "Local 79") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 520 Eighth Avenue, Suite 679, New York, New York. Local 79 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

13.   Mason Tenders District Council of Greater New York (hereinafter referred to as "Mason Tenders District Council") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 520 Eighth Avenue, Suite 679, New York, New York. Mason Tenders District Council is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

14.   District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO (hereinafter referred to as "District Council Carpenters") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 395 Hudson Street, New York, New York. District Council Carpenters is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

15.   Local Union 3, International Brotherhood of Electrical Workers (hereinafter referred to as "IBEW Local 3") is and at all pertinent times has been an

unincorporated association established and operating as a labor organization with its principal office located at 158-11 Harry Van Arsdale Jr. Avenue, Flushing New York. IBEW Local 3 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

16.   Teamsters Local 282 a/w International Brotherhood of Teamsters (hereinafter referred to as "Teamsters Local 282") is and at all pertinent times has been an unincorporated association established and operating as a labor organization with its principal office located at 2500 Marcus Avenue, Lake Success, New York. IBEW Local 3 is a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C. § 152(5).

## FACTS

17.   Time Square is a commercial real estate development and construction management firm operating in New York City. Time Square is currently acting as a construction manager on a jobsite located at 785 Eighth Avenue, New York, New York (the "Jobsite") building a forty-three (43) story commercial building. Construction on the project began in or about January 2007.[1]

18.   As the construction manager, Time Square solicited and retained subcontractors to complete the various construction projects at the Jobsite, including, but not limited to, Navillus Tile Inc. ("Navillus"), Kew Electric ("Kew"), Bay Ridge Mechanical ("Bay Ridge") and Eastern Air ("Eastern").

19.   Time Square subcontracted with Navillus to complete concrete and masonry work at the Jobsite. To complete the work, Navillus hired union employees represented by Laborers Local 20, Carpenters Local 608, Metal Lathers Local 46, Local

---

[1] All dates are in 2007 unless otherwise noted.

14-14B and Local 15D. Navillus is a member of the Building Contractors Association, an association of contractors, which has entered into various collective bargaining agreements with trade unions involved in the construction industry, including, but not limited to the aforementioned unions. The terms and conditions of employment of Navillus' employees are governed by these various collective bargaining agreements.

20. Time Square subcontracted with Kew to complete electrical work at the Jobsite and its employees are represented by IBEW Local 3.

21. Time Square subcontracted with Bay Ridge to complete sprinkler and plumbing work at the Jobsite and its employees are not represented by a union.

22. Time Square subcontracted with Eastern to complete heating and ventilation work at the Jobsite and its employees are not represented by a union.

23. Starting in or about February, representatives of Local 638 and the BCTC began contacting Time Square to inquire about which subcontractors had been hired to complete work at the Jobsite, specifically inquiring about the sprinkler work, and to demand that Time Square assign the work to a subcontractor that employed Local 638 members.

24. Specifically, in or about February, Patrick Dolan ("Mr. Dolan"), a representative of Local 638 and the BCTC along with approximately ten other BCTC representatives, all of whom were also of officials with the various other Defendants, went to the Jobsite and asked Time Square's Project Manager, Fergal Conefrey ("Mr. Conefrey"), who Time Square assigned the sprinkler work to and to demand the work for Local 638.

25. Thereafter, Mr. Dolan contacted Mr. Conefrey a number of times to follow up on the assignment of the sprinkler work, but Time Square did not respond because the sprinkler work was already subcontracted to Bay Ridge.

26. Because Time Square did not acquiesce to Mr. Dolan's direct demands for the sprinkler work, on May 25, Local 638 began leafleting at the jobsite, under the guise of protesting Bay Ridge's alleged substandard wages.

27. As soon as Local 638 began "leafleting," it signaled to *all of* the Union affiliated employees to walk off the job and, thereafter, the Jobsite was completely shut down for three days, May 25, May 29 and May 30, thereby causing Time Square to lose substantial amounts of money.

28. On May 25, as soon as Local 638 began leafleting, Time Square set up reserve gates at the jobsite. Specifically, one entrance to the Jobsite was reserved for the employees of the non-union contractors and a second entrance was reserved for all of the union affiliated contractors' employees. Time Square sent letters to Navillus, Kew, Bay Ridge, Eastern and Local 638, informing them of the reserve gate locations.

29. Despite the reserve gates, and despite the fact that there was in fact no picketing and no picket line to honor, the Union affiliated employees would not return to work. When Mr. Conefrey asked representatives of Local 608, Local 20 and Local 3 if their members planned to return to work, their representatives responded that Local 638's leafleting was a "sanctioned picket," that their members "would not cross the picket line" and that their members were not going to work "in solidarity" with Local 638.

30. Local 638 and the BCTC members continued to hand out leaflets at both entrances and one of the leafleters, an organizer for the BCTC and a member of Local

638, at times completely blocked the Union employees' entrance to the jobsite. When the representatives were asked to leave, he initially refused.

31. Thereafter, on May 30, Local 638 stopped leafleting and all of the Union affiliated employees went back to work at the Jobsite.

32. In or around the last week of May 2007, a representative of Local 79 contacted Navillus and asked that a Local 79 laborer be put on the Jobsite. The Navillus representative directed Local 79 to Time Square. Despite the fact that the laborer was not needed, Time Square agreed, as a courtesy and to avoid a labor dispute, to put one Local 79 member, Nick Albanese ("Mr. Albanese"), to work. Time Square used Navillus as the individual's "paymaster" because Time Square does not have a contract with Local 79. This is a common practice in the construction industry.

33. In or about the beginning of June, Mr. Albanese began working at the Jobsite. Shortly thereafter, performance issues arose regarding Mr. Albanese prompting Time Square to contact Local 79 to inquire about replacing Mr. Albanese. Local 79 refused Time Square's request so Time Square kept Mr. Albanese on the job, again as a courtesy to Local 79.

34. Around the same time, Navillus decided that it did not want to act as Mr. Albanese's paymaster at the Jobsite. Therefore, Time Square arranged for Par Wrecking, another contractor on the Jobsite with a contract with Local 79, to serve as paymaster. Mr. Albanese refused to accept a paycheck from Par Wrecking, and Mr. Conefrey indicated that if Mr. Albanese was unwilling to accept the paycheck then he could no longer work at the site. However, Time Square never fired Mr. Albanese.

35. Despite the fact that Mr. Albanese has clearly refused to work at the Jobsite, on June 26, Local 79 began picketing including parking a truck with a large inflatable rat directly in front of the entrance to the Jobsite.

36. In addition to the truck, approximately seven representatives of Local 79 and the BCTC placed themselves on Eighth Avenue in front of the 48th Street entrance to the Project. These Local 79 and BCTC representatives carried placards that state "Construction and General Building Laborers Local 79 Organizing Construction Laborers Employed by Times Square Construction & Development. Please help us organize."

37. Contrary to its assertions that its picketing was to "organize Time Square" or due to issues with Mr. Albanese, Local 79's picketing's true purpose was to coerce Time Square to cease doing business with non-union subcontractor's such as Bay Ridge and Eastern.

38. The Local 79 representatives and the pick-up truck with the rat blocked the entrance to the Jobsite, effectively shutting down work on the Project. Specifically, members of Local 14–14B, and Local 15, the crane and hoist operators, Local 608, Local 3 and Local 46 refused to work. Without the crane operators, the Project was halted thereby costing Time Square substantial sums of money.

39. Time Square urged the Union workers to return to work and again pointed out that the Jobsite had separate gates for Union and non-union employees. However, notwithstanding Time Square's creation of reserve gates, a shop steward from Local 608, a constituent member of the BCTC, stated in words or substance that, " . . . no Union man will go to work [while Local 79 is picketing] no matter how many gates they put up."

40. Because the Union employees' refused to return to work, despite the reserve gate, Time Square was forced to cancel its contracts with Navillus and Kew and procure a replacement contractors to complete work at the Jobsite, at great expense. However, Time Square made clear to the Unions that if their members would commit to return to work, Time Square would reinstate its contract with Navillus and Kew. The Unions did not reply to Time Square's offer.

41. The Unions continued picketing until on or about July 5. In fact, on June 29, fifty (50) or sixty (60) BCTC affiliated union members blocked a city street to stop a cement truck from delivering cement to the Jobsite. The picketing became so violent that the police had to be called and, upon information and belief, approximately eight (8) of the protesters were arrested, including, but not limited to, agents of Carpenters Local 608 and Laborers Local 20. As a result, the cement vendor refused to supply any more cement to the Jobsite and Time Square was forced to find a new vendor on short notice.

42. Moreover, upon information and belief, representatives of Teamsters Local 282, a constituent member of the BCTC, contacted one of Time Square's cement vendors and threatened the vendor stating that Local 282 would refuse to deliver any of the vendor's goods if the vendor continued supplying cement to Time Square.

43. Thereafter, Time Square reached a settlement with Local 79, returning a Local 79 member to the job and using a different paymaster. As a result, the picketing ceased and Navillus and Kew's contracts were reinstated.

44. Based on the forgoing, it is clear that the BCTC and the Unions, had a consistent motive, first with Local 638 leafleting and then with Laborers Local 79 picketing, and the resultant strikes by the other defendants to threaten, coerce, or restrain

Time Square to cease doing business with the non-union affiliated subcontractors working at the Jobsite and hire only BCTC affiliated subcontractors, in clear violation of § 8(b)(4)(B) of the Act.

45.  As a result of the Unions secondary activity, the Jobsite has been shut down on two separate occasions, which not only delayed construction, but also cost Time Square hundreds of thousands of dollars.  As such, Time Square was forced to find alternative subcontractors and vendors in order to complete work and procure materials on short notice, and at great additional expense.

**WHEREFORE**, Plaintiff Time Square Construction seeks judgment against Defendants:

(a)  Awarding compensatory damages in an amount to be determined at trial;

(b)  Awarding Plaintiff its costs and disbursements associated with this action; and

(c)  Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York.
       August 20, 2007

Respectfully submitted,

By: _____
    Joel E. Cohen (JEC 5312)

McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173-1922
212.547.5400

Attorneys for Plaintiff
Time Square Construction, Inc.

NYK 1113438-4.079158.0011

- 12 -